IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| TRACY CALVIN DUNLAP Jr., | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Action No.: 2:16-cv-00349 |
| ERIC D. WILSON, Warden | ) ) ) | |
| Respondent. | ) ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Tracy Calvin Dunlap Jr.'s ("Dunlap") Petition for a Writ of Habeas Corpus ("Petition") filed pursuant to 28 U.S.C. § 2241, ECF No. 1, and the Respondent's Motion to Dismiss, ECF No. 5. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and Dunlap's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2003, the United States District Court for the Middle District of North Carolina sentenced Dunlap to a 324 month imprisonment for the following violations: engaging

in monetary transactions in property devised from wire fraud in violation of 18 U.S.C. § 1957(A)(B); transportation in interstate commerce of fraudulent securities in violation of 18 U.S.C. § 2314; fraudulent interstate transactions in violation of 15 U.S.C §§ 77(q) and 77(x); mail fraud in violation of 18 U.S.C. § 1341; and wire fraud in violation of 18 U.S.C. § 1343. ECF No. 1 at 1.

Dunlap's Judgment and Commitment Order (hereinafter "J&C") contained a Criminal Monetary Penalties provision which outlined the required criminal penalties Dunlap must pay. *Id.* at 5. Dunlap was ordered to immediately pay a special assessment of $100.00 for each of the twenty-three counts of fraud he was convicted of, for a total of $2,300.00. *Id.* at 6. Dunlap's obligation to pay the special assessments was satisfied as of December 19, 2007, by way of 18 U.S.C. § 3013(c) and Program Statement 5380.08(8)(a)(1). ECF No. 5, attach. 2 at 2. After completion of the assessment obligation, Dunlap maintained a restitution penalty of $27,780,926.00. *Id.* at 2. Section A of Dunlap's J&C provided that his $2,300.00 payment was to be paid immediately in accordance with Sections D and E. *Id.*, attach. 1 at 6. Section D provided: "[p]ayment in monthly payments of $100.00, to commence 30 days after release from imprisonment to a term of supervision and every 30 days thereafter a similar payment shall be made to the end of supervision." *Id.* Section E of the special instructions for the payment of criminal monetary penalties provided that "[t]he special assessment in the amount of $2,300.00 is due and payable immediately at such times and in such amounts as directed by the Federal Bureau of Prisons through the Inmate Financial Responsibility Program." *Id.* The J&C did not address when Dunlap's restitution payments to the Inmate Financial Responsibility Program ("IFRP") should be paid and Section B of the Schedule of Payments provision was unchecked, which would require immediate payment of all criminal monetary penalties. *Id.* The end of the

J&C stated that "[u]nless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment." *Id.*

From December 2007 through September 2015, Dunlap was incarcerated in Federal Correctional Institution (FCI) Ft. Dix Low and in Delaware Hall at FCI Petersburg Low where he was not compelled to participate in the IFRP and make restitution payments while in custody. ECF No. 1 at 5-8. When Dunlap was moved to Virginia Hall at FCI Petersburg Low in September 2015, a Correctional Counselor met with Dunlap to review and establish a financial plan for the restitution penalty. ECF No. 5, attach. 2 at 2. Dunlap claimed he was not obligated to pay restitution during his incarceration. *Id.* at 3. The Correctional Counselor called a financial specialist in the United States District Court for the Middle District of North Carolina on September 18, 2015, who stated that the sentencing court did not issue a special instruction for delayed restitution payment. *Id.* at 3. The Correctional Counselor then suggested that Dunlap pay the minimum IFRP payment of $25.00 per quarter. *Id.* at 2-3. Dunlap agreed to the minimum payment and signed the IFRP contract on December 14, 2015. *Id.*, attach. 4.[1]

On October 28, 2015, Dunlap began the administrative process via an Administrative Remedy Attempt at Informal Resolution. ECF No. 1 at 15. On December 2, 2015, Dunlap filed a Request for Administrative Remedy requesting deferred restitution payments because he believed the sentencing court ordered he make restitution payments after incarceration and that the Correctional Counselor compelled him to sign the IFRP contract. *Id.* at 14. The Bureau of Prisons ("BOP") rejected Dunlap's complaint because they believed: (1) Dunlap's claim for deferred restitution payments lacked documented support and (2) Dunlap is subject to the effects

---

[1] Petitioner alleged he signed the IFRP contract "under duress and threat of restriction of privileges." ECF No. 9 at 7.

3

of non-participation in the IFRP should he refuse payment.[2] *Id.* On January 11, 2016, Dunlap filed an appeal to the BOP's Mid-Atlantic Office, which subsequently denied the appeal on January 19, 2016. *Id.* at 17. On February 2, 2016, Dunlap appealed that decision to the BOP's General Counsel Office, which also denied his appeal. *Id.* at 12.

On June 24, 2016, Dunlap filed the instant Petition for Writ of Habeas Corpus in this Court pursuant to 28 U.S.C. § 2241 claiming his restitution should be deferred until 30 days after release from BOP custody and requesting relief from the IFRP contract he signed. ECF No. 1. On October 18, 2016, Respondent filed a Motion to Dismiss, Brief in Support, and a *Roseboro* Notice. ECF Nos. 5-7. Dunlap responded to the Respondent's Motion to Dismiss on November 16, 2016, ECF No. 9, to which the Respondent timely filed a Rebuttal on December 1, 2016, ECF No. 12. Consequently, the matter is now ripe for recommended disposition.

## II. ANALYSIS

### A. Section 2241 and Exhaustion of Remedies

Section 2241 authorizes the federal court to issue a writ of habeas corpus to state and federal prisoners who are "in custody in violation of the Constitution of laws or treaties of the United States." More specifically, a § 2241 habeas petition "challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *see also In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("Attacks on the execution of a sentence are properly raised in a § 2241 petition."). "[A]n inmate's challenge to the BOP's

---

[2] According to 28 C.F.R. § 545.11(d), non-participation may result in the inability to receive furlough, the inability to receive performance pay above the maintenance pay level, and quartering in the lowest housing status.

4

administration of the IFRP is a challenge to the 'execution' of a sentence that is cognizable under 28 U.S.C. § 2241." *Fontanez v. O'Brien*, 807 F.3d 84, 85 (4th Cir. 2015). A prisoner must file a § 2241 habeas petition in the federal district where he is in custody. *Rumsfield v. Padilla*, 542 U.S. 426, 434 (2006); *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989).

The federal district court may review a § 2241 habeas petition only after a petitioner exhausts his administrative remedies. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *Pelissero v. Thompson*, 170 F.3d 442, 445 (4th Cir. 1999). "Failure to exhaust may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished) (citing *Carmona v. United State Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)). "Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, "exhaustion protects administrative authority [by] giv[ing] an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is [hauled] into federal court, and it discourages disregard of [the agency's procedures]." *Id.* (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992) (internal quotations omitted)). Second, exhaustion helps promote efficiency by allowing the resolution of claims in a quicker, more economical fashion before filing in federal court. *Id.*

Accordingly, the BOP established the Administrative Remedy Program as set forth in 28 C.F.R. §§ 542.10-19, which outlines the procedure through which an inmate may seek formal review of an issue or complaint relating to his confinement. Generally, a prisoner must first attempt to resolve the matter through informal discussion with BOP staff. 28 C.F.R. § 542.13(a). If this is unsuccessful, the inmate may then submit "a formal written Administrative Remedy Request, on the appropriate form" at his place of incarceration. *Id.* § 542.14. "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10)

to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15. Thereafter, an inmate may appeal "to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* This constitutes "the final administrative appeal." *Id.*

Here, Dunlap satisfied the requirement to exhaust his administrative remedies prior to filing a § 2241 habeas petition. Dunlap filed a formal complaint on December 2, 2016, and the BOP denied Dunlap's requests for: (1) deferral of restitution payments until 30 days after release from BOP custody and (2) relief from his IFRP contract. ECF No. 1 at 14. On January 11, 2016, Dunlap appealed to the BOP's Regional Mid-Atlantic Office, which denied the appeal on January 19, 2016. *Id.* at 17. Dunlap subsequently appealed this decision within 30 calendar days by filing with the BOP's General Counsel Office on February 2, 2016. *Id.* at 12. That office constructively denied his appeal by failing to respond, which is the final step of the BOP's administrative remedies.[3] Additionally, the Respondent did not argue that Dunlap had not exhausted his administrative remedies. Therefore, the undersigned **FINDS** Dunlap has exhausted his administrative remedies.

## B. The BOP's Inmate Financial Responsibility Program

Dunlap argued that the J&C order did not require restitution payments until 30 days after his release from BOP custody because Section D stated he should make payments of $100.00 a month starting 30 days after his release. In addition, he claimed that since Sections A and E ordered that his $2,300.00 payment be made immediately and Section B was unchecked that would have required all criminal monetary penalties be made immediately, the court intended he pay restitution after his release. Dunlap also contended that he satisfied the assessment

---

[3] Neither Dunlap nor Respondent proffered evidence of Petitioner's denied appeal; however, the absence of a response to an appeal is considered a denial under 28 C.F.R. § 542.18.

requirement on December 19, 2007, and should not have to make further restitution payments because he was not required to do so from December 2007 until September 2015, when he transferred to Virginia Hall at FCI Petersburg Low. Additionally, Dunlap claimed he was unlawfully compelled to sign the IFRP contract by the Correctional Counselor on December 14, 2015. Consequently, Dunlap petitions this court to order the BOP to desist in their "illegal" collection of funds, to return of all the funds already collected, and to terminate the IFRP contract while permitting Dunlap to retain the privileges associated with IFRP compliance.

Respondent argued that the court intended Dunlap to pay restitution while incarcerated based on the J&C's provision stating that "[u]nless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment." Respondent claimed that since Dunlap was imprisoned and the special instructions in Section E did not expressly order payment at another time, Dunlap was required to pay restitution while he was in prison. Respondent stated that Dunlap retains the right to withdraw from the IFRP because participation in the program is voluntary, however, should Dunlap withdraw from IFRP, he may lose the privileges associated with the program.

The IFRP is a program that enables prisoners to make scheduled payments toward their court-ordered financial obligations directly from their inmate accounts. *See* 28 C.F.R. § 545.10–11. "Prison staff assist[s] inmates in developing financial plans, which are subject to periodic review." *Fontanez v. O'Brien*, 807 F.3d 84, 85 (4th Cir. 2015). The IFRP is a voluntary program which prohibits BOP from compelling an inmate to make payments. *Id.* at 85 (citing *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir.2010)). Although the program is voluntary, "inmates with financial obligations who refuse to participate in the IFRP may no longer be

eligible for many privileges, including more desirable housing and work outside the prison." *Id.* at 85 (citing 28 C.F.R. § 545.11(d)).

Under 28 C.F.R. § 545.11, BOP has the authority to enforce the Schedule of Payments provision of Dunlap's J&C. In reliance of *United States v. Miller*, Dunlap claimed BOP unlawfully collected restitution payments from him through the IFRP. 77 F.3d 71, 77-78 (4th Cir. 1996) (holding that district courts may not delegate their authority to establish amount and timing of payments of restitution or fines to [BOP] or probation officers without retaining ultimate authority over such decisions). Dunlap's claim was settled by *United States v. Watkins* where the Fourth Circuit held "[p]articipation in the IFRP does not violate *Miller*" because participation is voluntary. 161 Fed. Appx. 337 (4th Cir. 2006) (unpublished); *see also, Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (citing *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir.1999), and *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549-50 (9th Cir.1998)). The voluntary nature of the IFRP reinforces that the program is an optional mechanism to fulfill an inmate's court-ordered financial obligations.

Dunlap's claim against BOP's "illegal" collection of funds turns upon whether the court-ordered restitution was due during Dunlap's imprisonment. Dunlap argued that the absence of a specific directive for the restitution payments in the J&C – by virtue of the failure to check the box for Section B requiring immediate payment – is demonstrative of judicial intent to only require immediate payments of the $2,300.00, and not for the restitution. Conversely, Respondent argued that the prevailing guidance for the restitution payments is the text of the J&C stating that payments should be made while incarcerated if a period of imprisonment is imposed. Consequently, since both of these interpretations are reasonable readings of the J&C, the Court finds it to be ambiguous.

8

In the event of ambiguity at a defendant's sentencing, the Fourth Circuit requires a court to "carry out the true intention of the sentencing judge as this may be gathered from what he said at the time of sentencing" *United States v. Morse*, 344 F.2d 27, 30 (4th Cir. 1965); *see also Rakes v. United States*, 309 F.2d 686, 687 (4th Cir. 1962) ("...the sentences to be served in these cases are those pronounced in the defendant's presence in open court and not those set out in the written judgments of the court."). Here, the transcript is clear. The District Judge at sentencing ordered Dunlap to "commence paying the restitution, for any amount not paid before he is released from imprisonment, at the rate of $100 a month, beginning 30 days after his release from imprisonment..." ECF No. 9 at 22. While the J&C requires a 30 day delay of monthly payments upon Dunlap's release, the sentencing transcript clarifies that these payments are intended to address the balance from unpaid debt throughout imprisonment. The court did not intend to delay payments altogether but rather only intended to delay outstanding restitution payments by 30 days upon release. In addition, a financial specialist in the United States District Court for the Middle District of North Carolina on September 18, 2015, stated that the sentencing court did not issue a special instruction for delayed restitution payment. ECF No. 5, attach. 2 at 3. Therefore, the BOP is entitled to enforce the IFRP's requirements against Dunlap.[4] Furthermore, because Dunlap is subject to the IFRP's rules and regulations, he must abide by the terms of his IFRP contract. Consequently, Dunlap's refusal to comply will result in the effects of non-participation listed in 28 C.F.R. § 545.11(d), however, he still retains the option to terminate his contract in accordance with the associated penalties.

---

[4] Even if BOP's collection of funds were illegal, Petitioner may not seek reimbursement of restitution payments under 28 U.S.C. § 2241. *See, Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy."); *see also, Sowell v. Deboo*, No. 1:09-CV-34, 2009 WL 2029804 (N.D.W. Va. July 9, 2009) ("Thus, as monetary damages are not available under 28 U.S.C. § 2241, the petitioner's claim must be dismissed.")

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and Dunlap's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Dunlap is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 26, 2017

11